Good morning, I'm Darrell Rains of Morrison & Forrester for the Defendants and Appellates. I'll try to reserve five minutes of my time for rebuttal. The Court should reverse the District Court's decision to imply a private right of action for Section 13A of the Investment Company Act of 1940. For the last thirty years, statutory intent has been the key standard. It's the touchstone for deciding whether or not to imply a private right of action. The plaintiffs have tried to find statutory intent largely through an idea called ratification. Ratification is the idea that you can find congressional intent through inaction, through silence, if Congress later goes in and enacts an amendment to a statute. But because the task of finding intent through silence is difficult, the Supreme Court's told us that you have to meet two high standards before you can find statutory ratification from Congress. The first test is the prior law, the law before the amendment, must have been so well established that Congress must be deemed to have been aware of it. The second test is the amendments by Congress have to have been so sweeping that the Court can infer Congress was aware of the prior cases and chose not to amend the statute to deal with implied rights of action when it made all the other amendments that it chose to make. The plaintiffs have identified two statutory amendments by Congress which they say demonstrate congressional intent. The first is in 1970. So let's apply the test. How many cases had found a private right of action under Section 13A prior to 1970 when Congress acted? The plaintiffs have identified two district court cases, both of which assumed without deciding that a private right of action existed. I have not found any case where two district court decisions was found to have been sufficiently well established in the law that Congress could be deemed to have. The 1970 action, congressional action, was what exactly helped? There were a number of amendments to the entire Forty Act in 1970. The amendment in 1970 to Section 13A added subsection 2, which dealt with a problem of, a tricky problem. 13A deals with fundamental policies and that it lacked a separate provision for other policies that nonetheless required a shareholder vote. The SEC identified it as what it called a technical problem. You'll see that in the legislative history. And the SEC asked Congress to solve this problem by adding a section that says a shareholder vote is required to change not only fundamental policies, but also other policies. Okay. Did the district court rely on that? It did not, Your Honor. Okay. Let's go to the next one. They went to 13C, correct, the district court? Correct. The second amendment cited by the plaintiffs, and this is the amendment relied upon by the district court, was the Sudan Act, which was added in 2007. We can apply the same test to this Act. Was the law well established in 2007 that there was a private right of action under Section 13A? The plaintiffs have identified three district court decisions, two from New York, one from New Jersey. If you look closely at those cases, you'll see that in all three cases the defendants did not move for dismissal based on a lack of a private right of action. And so the discussion at the district court level is quite curt. In fact, in the third one, there was an argument about a different private right of action, and all the court said was for the reasons set forth above, I'm finding a private right of action for 13A as well. Just as I have not found the ratification test met by two cases, I haven't found that it is met by three cases. Then we get to the second prong of the test, which is, is there some evidence in the record that Congress's amendments were so sweeping that it must have thought about private rights of action and consciously chosen not to act? Well, we can see what Congress was doing with the Sudan Act, and it had nothing to do with private rights of action. What Congress said was, we want to encourage entities to divest from Sudan in protest of the genocide problem in Darfur. There is no evidence in the legislative history or in the record that Congress meant to address this. It said that you can't, nobody can sue, didn't it, in essence? Yes. The court, what Congress said was. Divestments. I'm sorry? It's a provision that disallows a clause of action. Yes, Your Honor. It's what we call a safe harbor. Congress stepped in and said, we want to protect investment companies and their officers and directors from any liability for any reason under any law brought by any plaintiff if they choose to divest from investments in Darfur. And so the safe harbor applies to criminal, civil, and administrative proceedings. It applies to any kind of plaintiff. The district court read that safe harbor as somehow saying something specific about Section 13A. And the district court said, huh, Congress used the word person. It must have been referring to person as that term is used in Section 13A. And they also, I thought, she adequately said, if they had intended this not to amend 13A, they wouldn't have put it in 13. 13. Why put it in 13 at all? I've looked in vain, Your Honor, for some evidence of why Congress chose to put it in Section 13 rather than some other place. But it reads too much into the location to say that Congress must have been doing something specific about 13A because it acts so broadly to reach criminal law and civil law and administrative law and all sorts of plaintiffs. But that's easily argued that then they should have given it its own section if they intended to reach everything. Certainly, it talks about everything. But if they're talking about everything and they're putting it in 13, certainly ought to intend to approach 13A. I can't explain why Congress chose that one place to put it. Yeah. The problem is it looks like they're taking away something that you say they never gave. But what that's the troublesome thing here. That's right. We have looked at, you know, you can argue that it's the first place where Congress has a prohibitory or regulatory provision in that act that's directed to investment companies. You can argue that that's the reason. But honestly, Congress gave us no explanation of why they chose to put it there rather than some other place. But what we can tell from the express language of the statute is that Congress meant to reach much more broadly than Section 13A. And so it reads far too much into the word person to say that Congress was trying to do something specific to recognize a previously existing private right of action under 13A, when clearly all it was trying to do was protect people from liability for divestments from the Sudan. I think that if looking at the Supreme Court cases on creating causes of action, if they had said that in C, that even though we created or may have created a private cause of action in A for deviating from the filed statements of policy, that you can't sue for this. Nobody can sue for this relating to the Sudan. Would that create – would that be a – would you agree that that would be a sufficient recognition of the existence of a right? Sure. If, for example, it's quite common to see in a statute a prefatory clause that will say something like, notwithstanding what we say in 13A, you can't be sued for divestiture under 13C. The closest we come, Judge, actually goes the other way. There's a provision in the Sudan Act that says we are carving out fiduciary duty claims, and those claims may still be brought. I read into that quite the opposite intent, an intent not to argue specifically to 13A, but rather to say the whole world is preempted except for certain kinds of fiduciary duty claims. Let me add just maybe in conclusion on this point. When we look at 13C, when we look at the Sudan Act, we have to know not only that there were three cases in the 80s and 90s briefly implying a private right of action. We also have to infer that Congress was well aware of what the Supreme Court had done since the 80s and 90s, especially in the Alexander v. Sandoval case. Congress had to know what the Second Circuit had done in the Olmstead case under another provision of the ICA. And so my take on it is, in the face of the recent decisions by the Supreme Court and other courts denying private rights of action under the Investment Company Act, Congress would have had to have been much more specific in enacting the Sudan exception to recognize a private right of action under Section 13A. With that, I'll reserve the rest of my time. Thank you. Good morning. May it please the Court, Counsel. My name is Mark Gross. To my left is my co-counsel, Rob Finkel, who's the brains behind the brief. I'm still trying to figure out my role. I'm here before you today. Do we need him up here instead of you? Probably. You'll let me know in another 15 minutes. I'm here before you today with a sense of historical irony in looking at this 1940 Act. We're going back 70 years to determine what Congress's intent was when this Act was passed. And why some historical irony? Because today, April 12th, marks the 65th anniversary of the passing of President Roosevelt, who signed this Act into law. What did it mean in 1940, some 70 years ago, when Congress wrote this Act? We don't have to guess at what their intent is. It's in the Act. They talk about eight policies that further the Act's intent. The question before this Court is whether there's a private right. We know there's a private right. When you look at Provisions 4, 6, 8, when investment companies change the character of their business without the consent of the security holders, the policy, the purpose of this chapter is to mitigate, and so far as feasible, eliminate the conditions enumerated which adversely affect the national public interest and interest of investors. So what right? That's a pretty general interest. It's not like an interest. I didn't see anything in there that says, and we've created a private right here. Not in that section. In fact, they had no trouble finding a private right in two provisions of that Act. That's correct. They were in 30F, which is now 29H, and 36, which is now 35B. They had no trouble making a private right in those, but I didn't see it in any language in 13A. 13A grants a specific voting right that never before existed. If there is any right that is fundamental here in our democracy, it's the right to vote. And that right is specifically referenced in 13, which prohibits the investment company from changing its concentration unless there's a majority of outstanding vote. That right is specific, but you don't have to look just at the language in the 1940 Act. If you look in the 1970 amendments, where that section 36 came in, if you take a look at the 1970 amendments, Congress was aware of the prior case law. You don't have to infer it. You don't have to guess. We know it. Congress was aware of the prior case law that assumed a private right of action because in the legislative history, Congress specifically referenced the Green Amendment, the Green case. It's in there. Green v. Brown is referenced specifically in the legislative history, and there's a statement. To obviate further misunderstanding is the statement of Congress. So when Schwab takes the position that there is only maybe one or two or three cases and we have to assume what Congress may or may not have understood in 1970, that's not correct because Congress made a specific statement in 1970. They were looking to change the law to facilitate the private right of action because it was assumed in 1970 that that private right existed in the Green case. And Congress facilitated it by amending Sections 8 and 13 to make it clear that deviation from an investment policy would be changeable only by shareholder vote and not the fundamental, whether there was a fundamental objective listed in a registration statement. But it seems to me that it's pretty clear, based on the Act, Section 42 of the ICA, that the SEC is to enforce 13A through investigation and institution of civil suits. It seems clear to me that the SEC can conditionally and unconditionally exempt people. It seems the SEC then can enforce, no question, right there in Section 42. My worry is where do I find the private right of action in 13? I can find it in 30F. I can find it in 36, which I, under my old rule, I was under 30F and 36. I know they're 29H and 35B now. And I guess I'm just trying to find it now in 13. Other than going to 13A3, I don't find it. No registered investment company shall unless authorized by the vote of a majority of its outstanding securities. That's in 13A. I appreciate that. And to me, that's a fundamental right. And if you take a look, if I may address the SEC exclusive enforcement issue, Section 13 requires documents, Section 32 requires documents from civil actions to be filed with the SEC. That provision would be superfluous. There would be no need for that provision if at the SEC were its sole provider. I would suggest to this Court, if I can address also the 36, the issue with respect to a specific private right in Section 36, Section 36B was a right for a very specific issue. The Fogel Court addressed it. Well, it doesn't seem like the Second Circuit buys your stuff. So if, in fact, you're urging me, then, to create a circuit split? Well, I think that this case would be consistent with the case thus far that has been decided by the Second Circuit. I guess I don't see how it's consistent with Olmstead. Well, it's consistent with Olmstead because Olmstead did not explore Section 44. And 44 is critical because it specifically states, Section 44 specifically talks about the District Courts of the United States shall have jurisdiction concurrently with State Courts for any suit or any action to enforce any liability or duty under this Act. Olmstead did not discuss Section 44. Olmstead did not discuss the 1970 amendments and the obvious implication and assumption by Congress that there was a private right, particularly when it considered and mentioned the Green case. Olmstead didn't talk about a core provision of the Act. Olmstead didn't talk about Section 33. It was an action by insurance companies where Olmstead talked about provisions that were regulating insurance companies and certain regulations that prohibited certain conduct. That clearly, that language was not rights-creating, what Olmstead did. And there is no implication of intent to confer any rights on a particular class of person on anything that Olmstead addressed. This Court is consistent with Olmstead by finding that Section 13 talks about rights, intent specifically in Section 13 to confer rights on a particular class of person. And this Court, this Court here, assumed a private right in Lapidus. So I don't ---- Olmstead, it seems to me this is what they did. First of all, they said 26F and 26I, which were added to the ICA in 1996, don't contain rights-creating language. Then they said Section 42 explicitly provides for enforcement of all these provisions by the SEC. Third, it says 36B added by Congress in 1970 explicitly created a private right of derivative action for certain breaches of fiduciary duty. Therefore, they rejected a private right of action. Now, tell me that that doesn't apply here. It doesn't for a number of reasons. Why? First of all, 36B was not intended to negate implied causes of action. There's nothing to indicate ---- Well, they didn't say it was, but they did say pretty specifically. And third, 36B added by Congress explicitly creates a private right of action. In other words, Congress put one together there. But that's only the third part of their story. The first is that 26F and I don't, and that 42 says that the SEC is responsible. With respect to 36, 36 was designed to expressly deal with an advisor's fee issue that where advisor's fees generally stated as a percentage of the market value, there was a problem with fees may have become unreasonably high when funds grew to enormous size. So 36B was in response to the 1970 amendments. It was not a core provision of the Act. It was designed to deal with a very specific and limited problem. And Section 36 of the 1940 Act had proved to be an ineffective vehicle for dealing with the problem. So Congress very specifically expressly authorized an action only by the SEC previously and imposed a very high standard of proof. So what the Court did… Before you go on, then they rejected, which I thought was the biggest part, then they rejected the arguments that imply a private right of action based on factors, and I'm reading, extrinsic to the language of the statute. The Court said, past decisions recognizing a private right of action under other sections, including 13A3, belong to an ancient regime. I know that language, and that language is placed… I mean, ancient regime kind of gives me… It's my regime. Right. It's our regime. We're living under it. Those cases that deal with the ancient regime, in my view, and I think in this Court's view, are those that occur pre-court, the pre-court C.O.R.T., the pre-court test. After court, it's not an ancient regime. The cases that dealt with this implied right of action, including Green from New York, including Lapidus from this Court, Congress assumed that one existed. And that's why the 1970 amendments are critical. With respect to 36, Congress was looking to solve a very specific problem, to expressly authorize a private right of action if fees became unreasonable, and that was dealt with in the 1970 amendments. What Congress did in 1970 is so critical to this Court's analysis, because it just had to tweak a little bit section 8 and section 13, because it already assumed after Green, and you have to come to these cases with an understanding that Congress understood what the law was, and Congress specifically mentions Green, that after Green, that Court, Congress wanted to make sure that our courts were going to help facilitate a private cause of action, and that's what the amendments did. The amendments actually helped facilitate and made it easier to bring a private cause of action when Congress took a look at this again in 1970. So you can't say yes, Your Honor, you can't say that Almostead is controlling on this Court when it didn't look at the 1970 amendments, it didn't consider the broad jurisdictional provisions of section 44 or any suit or action to enforce any liability, created How did the How did the I asked your adversary this, and I'm I think we raised it in the district court, perhaps even in a footnote. The district court didn't rely on that. Didn't rely upon it. But you are. We're relying upon it in this appeal, together with the district court's decision with respect to the Sudan Act, because, you know, Your Honor's mentioned something in conversation with excellent counsel for Schwab, is that Congress could have given its section 13C, its own separate provision, but that sort of would have flown in the face with the congressional understanding since this Act was passed in 1940 that they always presumed there would be a private right of action. The Sudan Act is further of that, furthers that congressional understanding that since this Act was passed, there always was that understanding. Every court, we've said this in our briefs. So why did they then put it in 13 if they knew that? Well, 13C. I mean, 13 makes reference. Well, I know. 13. I mean, your argument, I guess, before the poor district judge was, well, look at 13C, Judge. That's right in 13. That ought to have been today. And now a private right of action ought to be created. That's where she went. Not created. I don't think 13C creates the private right. I think 13C does the reverse. It limits the private right. 13C makes no sense if the argument is 13C is to create a private right. That right already existed. 13C limits the rights of shareholders to bring claims against investment companies. Safe harbor. It's to protect somebody if there's a divestiture of an investment. 13C makes absolutely no sense if it's placed anywhere else in the statutory scheme because it's consistent with the congressional intent to, one, provide this right that you need to vote, and, two, that it's always been there, that it's been assumed since 1940, it's been reaffirmed in 1970, and again when the Sudan Anne was passed. I see my time is running out, Your Honor. Well, you haven't got any rebuttals, so you just want to use it all. Give it to us. I would close by stating that this plaintiff is a member of the class whose benefit the statute was enacted, that there's an indication of express legislative intent in Section 13 to create a voting right, that there's implicit legislative intent in the 1970 amendments, that the statute is consistent with the private right in Section 44, which talks about bringing such a right, bringing actions in state or federal court, actions even at law. And the Transamerica case is interesting by contrast, if you take a chance to look at it, which prohibits a private right for damages because there is no action at law. Here, Section 44 talks about an action at law, and I think the reason in Transamerica supports the reasoning here to add a private right. The cause of actions, this cause of action is not traditionally one relegated to state law. Failing to imply it, failing to continue to imply it, leaves plaintiffs and courts to interpret patchwork. Can I just, we'll give you a little extra time here. There's only so fast I can talk. I know, you're pretty fast. Let's try to slow down for a minute. There really is no case expressly recognizing a private cause of action. That's right. That we have up until now. We have a statute that is 70 years old. We have amendments that were not relied upon by the district court that tangentially do different things. And we have a language that says notwithstanding any other provision, you can't, nobody can bring a cause of action for this, which is 13C. Is there any, you have to put a lot of weight on the notwithstanding any other provisions, don't you? Yes. Is there any place where that has been interpreted to indicate that there is a cause of action? I would have to investigate and report back to Your Honors. No, I'm sure you've done a thorough job of researching. I'm just trying to. Give your briefer a chance to give you a note. All right. That's a pretty big question. The brain shakes his head. The brain says no. Right, the brain says no. I don't recall. You haven't seen one. Okay. Thank you. If I may close up with this last point. Sure. I think it was Judge Ouslet who indicated just recently an opinion that the shareholders are entitled to depend on Section 13 for the safety of their savings. Clearly, he assumed that there would have been a private right under Section 13 had he been called upon to rule. It would seem to be clearly contrary to congressional intent here to rely upon the various state laws for violating voting rights when Congress set about to create this statutory scheme and when President Roosevelt signed this into law. And I would ask this Court to affirm the District Court below for the multitude of reasons that I expressed to you today. And thank you very much for your time. It's been a pleasure. Thank you. Thank that mad briefer, too. He did a good job. I say thanks to the mad briefer, too. Thank you. If I could briefly try to address six points made by Mr. Gross. And I'll just do it in the order I took him in my notes. First, he argued from the general policy provision of Section 1 that there must have been a congressional intent to find a private right of action. I'll concede, of course, that the entire Investment Company Act is an effort to regulate investment companies and that one of the ultimate beneficiaries of that act are investors. But finding that that is the way it's supposed to work, it doesn't make a lot of sense. We can read in the Act itself that in almost all cases the SEC is the entity delegated to regulate and enforce the provisions of the Act. You can find this exact distinction drawn with regard to the 34 Act, the Securities Exchange Act, another act intended to benefit investors. In the Touche Ross case, the United States Supreme Court considered this exact argument and held that just because a statute is generally intended to benefit investors doesn't mean that Congress created a private right of action for private plaintiff's class action attorneys. And in that action, in that decision, the Supreme Court denied a private right of action under Section 17a. So that is, in my mind, a complete answer to a general policy argument. It's been rejected by the Supreme Court. Second, Mr. Gross argued that you can find legislative intent right in the language of Section 13a. The way I read Section 13a, it's not so clear. In fact, it seems quite clear in the opposite direction. The statute begins with this language, no registered investment company shall. That language is better interpreted as being prohibitory or regulatory rather than as creating rights for private plaintiffs. Third, Judge Smith, you asked the question about how to make this case consistent with Olmstead and the Second Circuit. I think we have a very clear recent indication of how that's going to play out. We learned last week that a district court in the Southern District of New York, relying heavily on Olmstead, rejected the exact arguments being made in this case. That is the Western Investment Company. We submitted it last week. That's a district court in New York where private case – where 20 years ago cases had assumed a right of action. Reading Olmstead, that court said under Olmstead there is no longer a private right of action for Section 13a. I point out to you also that the district court in that case had the Sudan Act pointed out to it, it considered it, and rejected the Sudan Act as an argument supporting congressional intent. We know how the Second Circuit is going to turn out. Fourth, Mr. Gross referenced the Lapidus case here in the Ninth Circuit. Of course, as we all know, that court did not find a private right of action for Section 13a. It assumed one without deciding, went on to rule on a separate decision about whether the case – the injury was direct or derivative. Of course, the question about whether there is a direct injury is very different than the question about – a question of whether there is a direct right of action. Fifth, Mr. Gross told us that Section 13c, the Sudan Act, makes no sense if it's not meant to modify Section 13a. I actually think it's the other way around. The language of 13c makes no sense if it were intended to say something specific about Section 13a. Judge Schroeder, you have a couple of times referred us to that prefatory language at the beginning of the section. Here's what it says. Quote, notwithstanding any other provision of Federal or State law, and then it goes on. I don't see any way to read a provision that sweeps as broadly as that as meaning anything about Section 13a specifically. Finally, and in conclusion, Mr. Gross briefly referenced a recent decision by Judge Alsop here in our Court, and we were told that Judge Alsop almost certainly would have found a private right of action had he been asked the question. What actually happened in that case is Judge Alsop – the plaintiffs did not plead a Section 13a claim. Instead, they pleaded a California claim called 17-200. After the decision in the district court in this case, the plaintiffs in that case moved for leave to amend their complaint to add a direct Section 13a claim, and Judge Alsop denied them leave to do that. So the only real conclusion we can reach is that Judge Alsop has not directed his attention to whether there is a private right of action under Section 13a. You read that decision as essentially under State law. His decision on the merits is a decision on State law. I'm also saying, though, that he was asked to permit leave to amend the complaint in that case to add a claim under 13a. He denied it. Thank you, Your Honor. Thank you. The case just argued is submitted. The Court appreciates the quality of argument presented on both sides. We will hear the last case for argument this morning, which is Ayers and the Mad argument, too.
judges: Moody, Schroeder, Smith N. R.